# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

Donald Ray Cowan,

    Complainant,

    Vs.

State of Oklahoma,

    Respondent.

)
)
)
)
)
)
)
)
)
)

**15 CV - 117 JHP - PJC**

Case No : _____

*Notice of Constitutional Question Pursuant to Federal Rules of Civil Procedure Rule 5.1 (a)(1).*

**FILED**

MAR 11 2015

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### Complaint and Constitutional Challenge to Statute

    I, Donald Ray Cowan, hereinafter Complainant, appearing Pro-Se brings an "as applied to challenge" to the Oklahoma Firearms Act of 1971, 21 O.S. § 1289.2 and Manslaughter Statute 21 O.S. § 711, furthermore complainant makes a "Facial Challenge" of Oklahoma's Law of Self-Defense, its "foundation" and its "core." Complainant invokes jurisdiction of this court pursuant to *Federal Rules of Civil Procedure Rule 5.1.*

    Complainant has exercised his ***Second Amendment Rights*** and was denied due process and protection of law contrary to the Second, Fourth, Fifth, Sixth, Eight, and Fourteenth Amendment guarantees protecting his substantial rights from the arbitrary and capricious police powers of the State.

    This is a case of "First Impression" *thus* the Doctrines of "Res Judicata" and "Stare Decisis" doesn't apply to this Complaint or the Previous Holdings of the Oklahoma Court of Criminal Appeals. The United States Supreme court has made abundantly clear that "the very enumeration of the [Second Amendment] right takes out of the hands of government—even the

____Mail   ____No Cert Svc   ____No Orig Sign

____C/J   ____C/MJ   ____C/Ret'd   ____No Env
____No Cpys   ____No Env/Cpys   ____O/J   ____O/MJ

Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon [because] a constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all" (*Heller, 2821*). See *District of Columbia v. Heller, 128 S. Ct. 2783, 554 U.S. 570, 171 L. Ed. 2d 637* (2008).

## I.

## <u>Statement of the Case</u>

On January 10, 2004 Complainant, a United States citizen and Member of the Oklahoma Air National Guard, who was gainfully employed as an Armed Security Guard exercised his Second Amendment Rights in defense of himself and others, thereby preventing a Murder and the unlawful use of a motor vehicle to facilitate the discharge of a firearm.  These violent forcible felonies were committed against and in the presence of complainant.

Complainant was formally cleared in a procedural hearing, conducted under the Oklahoma Administrative Procedures Acts, of negligence and it was determined that his actions were within the rule of law pursuant to *Title 59 § 1750 (C)*, hence ruling the homicide as justified pursuant to 21 O.S. § 733.

On January 3, 2005 almost one year after the fact Complainant was charged, with a single count of Manslaughter First Degree, 21 O.S. § 711, for the purpose of affecting social control, and the forcible seizure of his firearm, in accordance with the *Arbitrary and Capricious Gun Control Policy* and procedure enacted by the State Legislature in 1971 and confirmed by the Oklahoma Court of Criminal Appeals in 1978. This Public Policy has become and is the foundation / core of the Law of Self-defense in the State of Oklahoma.

The evidence presented by the State at trial showed that the suspect … i.e. "victim" was armed, violent, and posed an immediate imminent threat to Complainant, the suspects minor step son, the citizens under complainant's care and protection, and the public in general thus establishing that complainant fell victim to Oklahoma's Arbitrary and Capricious Gun Control Procedure, and an unethical prosecutor who abused his prosecutorial discretion because he didn't want to return Complainants firearm after Complainant demanded his firearm be returned.

District Attorney Steven Kunzweiler invited the errors herein by intentionally violating the Oklahoma Rules of Professional Conduct Rule 3.8 (A)(D)(F), Rule 8.4 (B)(C)(D) and United States Criminal Code Title 18 U.S.C. § 241, § 242. This is a case of "First Impression" thus the Doctrines of "Res Judicata" and "Stare Decisis" doesn't apply to this Complaint. Complainant request a ***De Novo*** and ***Strict Scrutiny*** Standard of review.

## II.

### Material Issues of Fact

The issues and facts are,

1. The State of Oklahoma Alleges that Complainant committed First Degree Manslaughter, whereas Complainant alleges that he exercised his Second Amendment Rights thereby preventing his own murder and the unlawful use of a motor vehicle to facilitate the discharge of a firearm. This is a case of First Impression.

2. The United States Supreme Court has specifically stated that this is a right to be exercised to wit: "Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home" See District of Columbia v. Heller, 128 S. Ct. 2783, 554 U.S. 570, 171 L. Ed. 2d 637 (2008) at 2822.

3. Complainant was compelled by Title 59 § 1750 (C) to offer evidence against himself thus implicating himself in a homicide. This is a clear violation of Miranda v Arizona as the admission and waiver was not voluntary because a person subject to the provisions of the Act who fails to comply with this provisions of the Oklahoma Security Guard and Private Investigator Act "shall be guilty of a misdemeanor punishable by imprisonment for not more than sixty (60) days, or by a fine of not more than Two Thousand Dollars ($2,000.00), or by both such imprisonment and fine." See § 1750.11(A).

4. The state's case rest on a perceived crime against, Marlon Craft, a minor child and a perceived risk to the public due to the range of the bullet…i.e. Backdrop/ Negligence Factor. Those arguments and position were refuted by Jim Clark, a retired Sgt. of the Tulsa Police Department in an Administrative hearing conducted before the Oklahoma Council of Law Enforcement education and Training.  The pertinent statute reads "The Director of CLEET has authority… To immediately suspend a license if a licensee's actions present a danger to the licensee or to the public, a family household member, or involve a crime against a minor" See Title 59 § 1750.3 (B)(12), § 1750.7 (4), § 1750.9 (C).

5. A hearing was conducted by CLEET in accordance with the Administrative Procedures Act and it was determined that Complainants actions fell within the rules of licensing and that complainant's actions were reasonable and consistent with carrying out the functions of a Security Guard. Furthermore the Reviewing Authority—contrary to the request of District Attorney Steven Kunzweiler, Detective Huff, and Detective Nance— Determined that Complainant was not a threat to the public and refused to take action against complainant's Professional license and Professional Certification.

6. Complainant was given a Constitutionally deficient jury Trial that was intentionally structured to elicit a guilty verdict for the use of a firearm regardless of the evidence presented or the defense chosen thereby establishing a means of social control "without unnecessarily denying their lawful use in defense of life, home and property" because the Manslaughter Statute provides in theory a mechanism to allow their "lawful use" if a jury finds that the homicide was *committed under such circumstances as constitute excusable or justifiable homicide."*

7. During Trial District Attorney Steven Kunzweiler, while keeping with the Established Public Policy of the State  was "in error to try to exhort the jury to 'do its job'; that kind of pressure, whether by the prosecutor or defense counsel,

has no place in the administration of criminal justice," see United States v. Young, 470 US 1 - Supreme Court 1985.

- *A review of the record taken in context with Oklahoma's Arbitrary and Capricious gun control policy and the Administrative Procedures Act as it applies to complainant's Jury Trial has proven beyond any reasonable doubt that the actions of District Attorney Steven Kunzweiler, while unethical, were highly prejudicial thereby infringing on complainant's substantial rights to keep and bear arms in the home, which in turn has manifested a fundamental miscarriage of justice.*

- *The state legislature has delegated the authority to regulate the Security Industry by statute to the Oklahoma Council of Law Enforcement Education and Training. Thus when Kunzweiler asked the Jury, being that they are sworn members of the Judicial Branch of Government, to Convict Complainant to take away his Professional License by returning a verdict of guilty, he clearly gave the jury the impression that they had the legal authority to do so by order of the United States Supreme Court and that they were without any other legal choice but to convict. This was a violation of criminal procedure and the Separation of Powers guaranteed within the Tenth Amendment of the United States Constitution.*

- *District Attorney Steven Kunzweiler full statement in context reads:*

  > *"I think it was Mr. Dowd that had said that laws are there and have been on the books for – for years, decades, hundreds of years in some cases. And it's not the position of anyone individual to say that I'm going to choose today to disobey this law.*

  > *You-all have been sworn to uphold the law in the state of Oklahoma. And this case, I'd submit to you, is going to be one of those tougher ones because you certainly know that Ron Henderson was no angel in this incident. I'll be the first to say that. He was no angel. I think he certainly was the provocator (sic) in this case.*

  > *There is a quote from Supreme Court Justice, his name is Warran Burger. Warren Burger was the chief of the Supreme Court prior to William Rehnquist, back in basically the Nixon court days, and this is the quote that applies in this case: 'Who will watch the*

*Watchman?' You-all. It is your responsibility to watch the watchman.*

*Now, I've done my job. I've brought forth to you witnesses…that tells you a very tragic story, one that Marlon Craft should have never experienced. He saw the death of his dad, his stepdad. And the person who is solely responsible for his dad's death sits in the courtroom right across from you.*

*It's hard for me to see him as a Police Officer. He tells you today he is but you need to take away that—that badge from him. Your verdict of guilty in this case is going to do that. You need to take away that gun from him" (Tr. III 100-101).*

8. Failure to correct this travesty of justice would place the "integrity and reputation of the judicial process" in question, because contrary to the Opinion of the Oklahoma Court of Appeals, Kunzweiler statement is not harmless error but is in fact plain error. See Fed.R.Crim.P.52(b). "A plain error is a highly prejudicial error affecting substantial rights." U.S. v. Giese, 597 F.2d 1170, 1199 (9th Cir.), Cert. Denied, 444 U.S. 979 (1979). Plain error is invoked to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process. U.S. v. Smith, 962 F.2d 923, 935 (9th Cir. 1992).

### III.

### Second Amendment Challenge as Applied to Exercising of the Second Amendment Right

In United States v. Reese, 627 F.3d 792 (10th Cir. 2010), the Tenth Circuit adopted a "two-pronged approach" to Second Amendment claims. First, it "asks whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. at 800. If the law does not impose a burden, it is constitutional. If it does, then the court "must evaluate the law under some form of means-end scrutiny." Id. at 801. With this in mind this court has an ethical and legal obligation to order the State of Oklahoma to revisit its prior decision on rendering a whole class of protected firearms inoperable for self-defense.

Complainant request a ***strict scrutiny standard of review*** as applied to the Exercise of Second Amendment Rights Complainant makes the following allegations to wit:

1. **Count 1**-The Oklahoma Court of Criminal Appeals held in Ex parte Thomas 1908 OK CR 23, 1 Okl.Cr. 210, 97 P. 260 that,

   > *"The question now arrises: Is a pistol the character of arms in contemplation of the constitutional convention and of the people of the state when they declared that the right of a citizen "to carry and bear arms," etc., "shall never be prohibited." We hold that it is not, and most of the states where it has been passed upon support us in this conclusion."*

   Compare this with District of Columbia v. Heller, 128 S. Ct. 2783, 554 U.S. 570, 171 L. Ed. 2d 637 (2008) to wit :

   > *"In sum, we hold that the District's ban on handgun possession in the home violates the Second Amendment, as 2822\*2822 does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."*

2. **Count 2**-Using the Manslaughter Statute as a charging statute to circumvent the Second Amendment Guarantee is unconstitutional as the use of the "weapons" "Justification" and the "unnecessarily" elements violates the Second Amendment rendering the conviction null and void due to insufficient evidence, because *in a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most favorable to the prosecution" and asks whether "any*

*rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,319 (1979).*

Hence the right of the people to Bear Arms and the Right of Self –Defense are one and the same and are therefore inseparable. This issue of law is clear…that right "shall not be infringed." The United States Supreme Court has clearly indicated that the Third branch of Government is without jurisdiction in this matter because "the very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all" Heller 2821.   Therefore absent physical evidence of an act of Cold Blooded Murder thus establishing probable cause to sustain a murder charge the government better leave it alone.

Hence the following language of the Manslaughter Statute as applied to the complainants exercising of his Second Amendment Rights unlawfully infringes on the Second Amendment Guarantee. The challenged portion of the Statute, 21 O.S. 711, is:

> *"or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed."*

3. **Count 3** - On Direct Appeal the Court invoked the Invited Error Doctrine in violation of Complainants Sixth Amendment guarantee to a real jury trial as

opposed to the "show trial" that was conducted as a bar to deny relief in an attempt to protect its gun control policy as dictated in the Oklahoma Firearms Act of 1971 from Federal Judicial Review.

This is Consistent with established public policy and the States use of the challenged portion of the Manslaughter Statute that is direct violation of the Second Amendment guarantee as applied to the exercising of Second Amendment Rights. The challenged language and public policy of § 1289.2 of the Oklahoma Firearms Act of 1971 reads:

> ***"by enacting legislation having the purpose of controlling the use of firearms, and of prevention of their use, without unnecessarily denying their lawful use in defense of life"***

Hence, Complainant was given a constitutionally deficient Jury trial, when he refused to plead guilty, in accordance with the Prevention clause of the Oklahoma Firearm Act of 1971 and is confirmed by the scientific medical evidence introduced by, Dr. Distefano the Chief Medical Examiner, who determined that the "victim" had a Blood Alcohol Content of 0.21 and that the "cause of death was gunshot wounds of the chest" thus ruling the manner of death as a "Homicide" (Tr. III 253).

The trial was intentionally structured to elicit a guilty verdict for the use of a firearm regardless of the evidence presented or the defense chosen thereby establishing a means of social control "without unnecessarily denying their lawful use in defense of life, home and property" because the Manslaughter Statute provides in theory a mechanism to allow their "lawful use" if a jury finds that the

homicide was "*committed under such circumstances as constitute excusable or justifiable homicide.*"

The purpose of the Constitutionally Deficient Trial is to secure a Felony conviction regardless of the defense or evidence presented as a social control measure to curb the use of firearms thereby revoking the "privilege" to keep and bear arms. Hence giving the Appeals Tribunal the unlawful ability to decide on a case by case basis who has the right to bear arms and who doesn't.

The intentional misconduct of District Attorney Steven Kunzweiler and the Trial Courts Enforcement of its Arbitrary and capricious Public Policy has resulted in a denial of Petitioner's Substantial Rights... i.e. His Second, Fourth, Fifth, Sixth, Eight and Fourteenth Amendment guarantees. Furthermore these systematic violations has resulted in jury nullification of the Oklahoma Security Guard and Private Investigator Act, and the province of the State Legislature to regulate and authorize the use of firearms under the Oklahoma Firearms Act of 1971 § 1289.25. See Kunzweiler's statement to the jury "I submit to you in this case this was more a shoot first ask questions later for Mr. Cowan. His actions while he acted, he acted in an unlawful manner" (Tr. III 119) and compare it with the intent of the State Legislature to wit: "The provisions of this section and the provisions of the Oklahoma Self-Defense Act shall not be construed to require any person using a pistol pursuant to the provisions of this section to be licensed in any manner," 21 O.S. § 1289.25 ( I ).

4. **Count 4** - The State and Trial Court caused the "invited error" by invoking Oklahoma Case law and the doctrine of "Stare Decisis", contrary to the

authority of the State Legislature to dictate otherwise, thus allowing and Applying the Self-Defense law in the "Disjunctive" contrary to United States v. Olano, 507 U.S. 725, 732 (1993).

In *Ruth v. State 1978 OK CR 79 581 P.2d 919* the Oklahoma Court of Criminal Appeals gave a Dictum to the lower district courts that is being read by law enforcement officers, unethical prosecutors, self-defense instructors, criminal defense attorneys,   and liberal Judges in the "disjunctive."

The application of the law of self-defense is that a person isn't entitled to invoke the right of self-defense or use deadly force...*i.e.. Bear Arms*, under the *Oklahoma Firearms Act of 1971 § 1289.25,* thereby denying the ability to reach a claim of legal justifiability under Title 21 § 733, if the homicide was committed with a firearm.

This Dictum forces the Trial Court, to invoke the doctrine of "stare decisis" thus deny a justification instruction, hence when the Prosecutor invoked "stare decisis" when petitioner refused to plead guilty, the state invited the instructional error by creating a choice of evils by denying Petitioner protection of law and  procedural due process to assert a claim of immunity under the Oklahoma Firearms Act of 1971 § 1289.25, thus he was forced to choose the lesser evil and ask for the entire set of Oklahoma Uniform Jury Instruction on the "Defense of Self-Defense." This is a clear denial of the Fourteenth Amendments Guarantee of protection from the *ARBITUARY AND CAPRICIOUS POLICE POWERS*

*OF THE STATE*. The end result is an illegal application of the law of self-defense in the "disjunctive."

A similar problem occurred in the application of *The Federal Rules of Criminal Procedure Rule 52 (B)*, as noted by the Supreme Court, that the language "plain error or defect" was misleading to the extent that it might be read in the disjunctive. *See United States v. Olano*, 507 U.S. 725, 732 (1993) (incorrect to read Rule 52(b) in the disjunctive); *United States v. Young*, 470 U.S. 1, 15 n. 12 (1985) (use of disjunctive in Rule 52(b) is misleading). The pertinent part of this courts previous holdings on the right of Self-defense states,

> ▪ *"We think the Court in this early case said more than was necessary to reach its holding on self-defense. In Swan, the altercation began with angry words by Swan and resulted in Swan shooting and killing the deceased. Swan claimed that he had shot in self-defense, and there was testimony that the deceased had reached for his own pistol before the defendant drew his.... <u>This Court has always held that the right of self-defense cannot be invoked</u> by an aggressor or **by one who voluntarily enters into a difficulty armed with a deadly weapon, no matter how great his or per peril becomes.** McDaniel v. State, 8 Okl.Cr. 209, 127 P. 358 (1912); Price v. State, Okl.Cr., 541 P.2d 373 (1975). When the facts of the case demand it, this general statement of the law must be supplemented with instructions on such issues as withdrawal by an aggressor, but this statement is the core of the law of self-defense. (Ruth v. State 1978 OK CR 79 581 P.2d 919)"*

When a person in the home, workplace, or any other place he has a lawful right to be is presented with the decision to retreat or "Stand His Ground" he has made a choice. If he chooses to Bear Arms as opposed to retreating he "*voluntarily enters into a difficulty armed with a deadly weapon*" thus he is unable to invoke the right of self-defense *"no matter*

*how great his or her peril becomes"*, hence the unavailability of Self-defense in Oklahoma's Law of Self-Defense is a gun control policy that is in direct violation of the Second Amendment Guarantee of the United States Constitution and the Constitutional Guarantee of Article 2 § 26 of Oklahoma State Constitution.

The aggressor is the person who used a firearm in the commission of a homicide weather justifiable or not. The Scientific medical evidence introduced by, Dr. Distefano the Chief Medical Examiner, determined that the suspect had a Blood Alcohol Content of 0.21 and that the "cause of death was gunshot wounds of the chest" thus ruling the manner of death as a "Homicide" (Tr. III 253).

5. **Count 5** - Conducting a Trial in this Manner is structural error and has infringed on Petitioner's Constitutional Guarantee to keep and Bear Arms in the Home and their use for Self-Defense.

- Complainant received a constitutionally deficient jury trial that was structured in the states favor and shifted the burden of the state to prove by clear and convincing evidence that Complainant was not in defense of self, others, or that his actions and the use of the firearm prevented or stopped a violent forcible felony.

The trial was designed to elicit a guilty verdict regardless of the evidence presented or the defense chosen thereby establishing a means of social control for *"the purpose of controlling the use of firearms, and of prevention of their use, without unnecessarily denying their lawful use*

*in defense of life, home and property" See § 1289.2 of the Oklahoma Firearms Act of 1971.*

- According to the United States Supreme Court in *Sullivan v. Louisiana*, this amounts to "structural error, and thus cannot be harmless regardless of how overwhelming the evidence of guilt… [hence] harmless error analysis cannot be conducted with respect to error of this sort consistent with the Sixth Amendment right to a jury trial…[thus] the Court concludes 'the entire premise of Chapman [harmless-error] review is simply absent.' Ante, at 280, *Sullivan v. Louisiana, 508 US 275 - Supreme Court 1993*.

- Furthermore conducting a trial in this manner violates the Second Amendment Guarantee by allowing liberal prosecutors, liberal trial or appellate judges to decide on a case by case basis if the right is worth insisting upon, hence "where the jury views the evidence from the lens of a defective…instruction, the Court reasons, there can be *no* factual findings made by the jury beyond a reasonable doubt in which an appellate court can ground its harmless-error analysis." *Sullivan v. Louisiana, 508 US 275 - Supreme Court 1993*.

6. **Count 6** - Oklahoma's Law of Self-defense and Firearm Act of 1971 violates Federal Statutory and Constitutional Law. More Specifically the Second Amendment of the United States Constitution.

7. **Count 7** - Complainant's Manslaughter Conviction and subsequent incarceration premised on the exercising of Second Amendment Rights Violates

the Second, Fourth, Fifth, and Eighth Amendment guarantees of the United States Constitution and is a Travesty of Justice.

This *Constitutional Challenge* should be heard because it will aid this court in its Appellate Jurisdiction because any adverse ruling resulting from the denial of a constitutional guarantee, is a "substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) , hence "showing that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000). Complainant is an innocent man who was, illegally seized, illegally convicted, illegally sentenced, and illegally incarcerated for a crime he did not commit.

Complainant has attached an Appendix to this "Notice of Constitutional Question" pursuant to Rule 5.1 (a)(2) detailing the "papers" associated with the service of this notice. Furthermore complainant is an indigent Pro-Se litigant and has included with this initial filing a "MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND SUPPORTING AFFIDAVIT"

## IV.

## Relief Requested

Wherefore petitioner in accordance with the First Amendment guarantee to petition the government for a redress of grievances, petitions this court to address his grievance by granting the following relief,

1. Declare the Challenged statutes, i.e... ***21 O.S. § 711 and § 1289.2*** and their Application to the Exercising of Second Amendment Rights unconstitutional on Second Amendment Grounds and issue and Order to the Oklahoma Court of Criminal Appeals and order them,

   a.   To cease and desist the enforcement of its illegal application of its gun Control Policy. The policy prevents the lawful use of firearms for the purpose of self-defense and is currently the foundation of the Law of Self-Defense in the State of Oklahoma. This policy of restriction applies to any private use of a firearm inside the home as well as in a public place or establishment regardless of the authority to carry a concealed weapon under the Oklahoma Self-defense Act.

   b.   To cease and desist the illegal use and invocation of the invited error doctrine as a procedural bar to avoid constitutional issues and questions of law.

   c.   To cease and desist the illegal abuses of the Rules of Evidence to circumvent the Second, Fourth, Fifth, Eight, and Fourteenth Amendment guarantees.

   d.   To cease and desist the illegal use of the manslaughter statute to circumvent the Second, Fourth, and Fifth Amendment guarantees, further ordering that Petitioners Manslaughter Conviction is to be vacated and charges dismissed

on Second Amendment Grounds because "the right of the people to keep and bear arms shall not be infringed."

e. To cease and desist its illegal attempt to cover up the unethical acts of District Attorney Steven Kunzweiler and hold him accountable to the Oklahoma Rules of Professional Conduct. The Oklahoma Code of Judicial Conduct provides relief and effective measures however the court is unwilling to police their own profession.

f. To cease and desist the unlawful seizure of Petitioners firearm and order its return to his possession as it is a protected instrument contrary to their previous ruling in Ex parte Thomas 1908 OK CR 23, 1 Okl.Cr. 210, 97 P. 260 that is not.

g. To cease and desist the requirement that a citizen must first plead for the right of self-defense before a citizen can reach a claim of legal justification and immunity.

h. To cease and desist any and all attempts to classify and define a "Defense of Second Amendment Rights" just as they have done with the right of self-defense by labeling it as "Defense of Self-Defense" in doing so they attempt to turn the right into an issue of fact as opposed to an issue of law. The United States Supreme court specifically stated this is a "right" to be exercised …
*"Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home"*

2.  Order the Reinstatement of Petitioner into the Oklahoma Air National Guard with
    credit for lost time, rank, pay, and retirement points.

3.  Any other relief this court feels is necessary in the pursuit of justice.

### Appendix

A.  Summary Opinion Oklahoma Court of Criminal Appeals

B.  Oklahoma Firearms Act of 1971 § 1289.2 – Legislative Findings

C.  Oklahoma Firearms Act of 1971 § 1289.25 – Justifiable Deadly Force

D.  Homicide § 733 – Justifiable Homicide by Other Persons

E.  Homicide § 711 – First Degree Manslaughter

Respectfully submitted,

Donald Ray Cowan, Pro-se
140 Goad Road
Bradford, Arkansas 72020
(501) 593-8760

## **Certificate of Service**

I hereby certify under penalty of perjury that One copies (1) of this "*Notice of Constitutional Question Pursuant to Federal Rules of Civil Procedure Rule 5.1 (a)(1)*" and attached Appendix was mailed by US Priority Mail, postage prepaid to the respondent on the 9 , day of MAR , and 2015.

### *Copy 1:*

E. Scott Pruitt,
Attorney General

313 NE 21ST ST

OKLAHOMA CITY, Oklahoma 73105-3207

Priority Mail Tracking Number: 9405 9036 9930 0374 2306 04

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

JUN 17 2009

MICHAEL S. RICHIE
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

DONALD RAY COWAN,

          Appellant,

v.

THE STATE OF OKLAHOMA,

          Appellee.

)
)
)
)
)
)
)
)
)

NOT FOR PUBLICATION

Case No. F-2007-1167

RECEIVED

JUN 17 2009

ATTORNEY GENERAL

## SUMMARY OPINION

### A. JOHNSON, VICE PRESIDING JUDGE:

Appellant Donald Ray Cowan was tried by jury and convicted in the District Court of Tulsa County, Case No. CF-2005-0001, of Manslaughter in the First Degree, in violation of 21 O.S.2001, § 711. The jury fixed punishment at four years imprisonment. The Honorable Gordon D. McAllister, Jr., who presided at trial, sentenced Cowan accordingly. From this judgment and sentence Cowan appeals, raising the following issues:

    (1)    whether the jury instructions and the prosecutor's arguments erroneously conveyed to the jury that he was not legally entitled to act in self-defense;

    (2)    whether prosecutorial misconduct prevented him from receiving a fair trial; and

    (3)    whether he received effective assistance of counsel.

We find reversal is not required and affirm the Judgment and Sentence of the trial court.



Appendix A



**1.**

Any error caused by the jury instructions on self-defense was invited by Cowan's request of those instructions.  Reversal cannot be based on invited error.[1]  Nevertheless, the jury instructions were warranted by the evidence and properly stated the law.

**2.**

Cowan was not denied a fair trial because of prosecutorial misconduct. Detective Huff did not give an opinion on the ultimate issue of the reasonableness of Cowan firing his weapon, but simply highlighted information given to him by Cowan regarding Cowan's actions during the incident.  Cowan was also not denied a fair trial because of the prosecutor's request that the jury convict Cowan and take away his badge.  While the State concedes error, the error was harmless as the outcome of the trial would not have turned out differently absent the comment.[2]

**3.**

While trial counsel requested jury instructions that Cowan contends were adverse to his defense, these instructions were warranted by the evidence and properly stated the law.  Reversal on this ineffective assistance claim is not appropriate, therefore, because Cowan cannot show prejudice from the alleged error (i.e., the instructions resulted in a miscarriage of justice or the denial of a

---

[1] *See Hogan v. State*, 2006 OK CR 19, ¶ 45, 139 P.3d 907, 925.
[2] *See Mack v. State*, 2008 OK CR 23, ¶ 9, 188 P.3d 1284, 1289 ("we will not grant relief unless a defendant is deprived of a fair trial and is prejudiced by improper argument"); *Wiley v. State*, 2008 OK CR 30, ¶ 5, 199 P.3d 877, 879 ("The burden rests with [a]ppellant to show that there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the

substantial statutory or constitutional right).[3]  Cowan, additionally, was not prejudiced by counsel's failure to object to the prosecutor asking the jury to take away Cowan's badge by convicting him; since, as noted above, the outcome of the trial would not have been affected.[4]

## DECISION

The Judgment and Sentence of the District Court is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2009), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE GORDON D. McALLISTER, JR., DISTRICT JUDGE

| **APPEARANCES AT TRIAL** | **APPEARANCES ON APPEAL** |
|---|---|
| PATRICK L. ADAMS | LEE ANN JONES PETERS |
| 2 WEST SIXTH STREET, STE 500 | P. O. BOX 926 |
| TULSA, OK 74119 | NORMAN, OK 73070 |
| ATTORNEY FOR DEFENDANT | ATTORNEY FOR APPELLANT |
| STEVE KUNZWEILER | W. A. DREW EDMONDSON |
| ASSISTANT DISTRICT ATTORNEY | OKLAHOMA ATTORNEY GENERAL |
| 500 S. DENVER | WILLIAM R. HOLMES |
| TULSA, OK 74103 | ASSISTANT ATTORNEY GENERAL |
| ATTORNEY FOR STATE | 313 N.E. 21ST STREET |
| | OKLAHOMA CITY, OK 73105 |
| | ATTORNEYS FOR APPELLEE |

---

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome").
[3] *See Hancock v. State*, 2007 OK CR 9, ¶ 102, 155 P.3d 796, 820.
[4] *See Wiley*, 2008 OK CR 30, ¶¶ 4-5, 199 P.3d 877, 878-79.

3

OPINION BY:  A. JOHNSON, V.P.J.
C. JOHNSON, P.J.:  Concur
LUMPKIN, J.:  Concur
CHAPEL, J.:  Concur
LEWIS, J.:  Concur in Result

RA

**OSCN** THE OKLAHOMA STATE COURTS NETWORK

Previous Section | Top Of Index | This Point in Index | Citationize | Next Section | Print Only

Title 21. Crimes and Punishments

# Oklahoma Statutes Citationized
## Title 21. Crimes and Punishments
### Chapter 53 - Manufacture, Sale, and Wearing of Weapons
#### Oklahoma Firearms Act of 1971
##### Section 1289.2 - Legislative Findings
Cite as: O.S. §, __ __

The Legislature finds as a matter of public policy and fact that it is necessary for the safe and lawful use of firearms to curb and prevent crime wherein weapons are used by enacting legislation having the purpose of controlling the use of firearms, and of prevention of their use, without unnecessarily denying their lawful use in defense of life, home and property, and their use by the United States or state military organizations and as may otherwise be provided by law, including their use and transportation for lawful purposes.

### Historical Data

Laws 1971, HB 1248, c. 159, § 2, emerg. eff. May 24, 1971; Amended by Laws 1995, SB 3, c. 272, § 40, eff. September 1, 1995.

### Citationizer© Summary of Documents Citing This Document

| Cite Name | Level | | |
|---|---|---|---|
| **Oklahoma Court of Criminal Appeals Cases** | | | |
| Cite | Name | | Level |
| 1973 OK CR 88, 507 P.2d 552, | WITHERS v. STATE | | Cited |
| 1973 OK CR 89, 507 P.2d 561, | CULPEPPER v. STATE | | Cited |

### Citationizer: Table of Authority

| Cite | Name | Level |
|---|---|---|
| None Found. | | |

Appendix B

# OSCN
### THE OKLAHOMA STATE COURTS NETWORK
*www.oscn.net*

Home    Courts    Court Dockets    Legal Research    Calendar    Help

Previous Section | Top Of Index | This Point in Index | Citationize | Next Section | Print Only

Title 21. Crimes and Punishments

## Oklahoma Statutes Citationized
### Title 21. Crimes and Punishments
#### Chapter 53 - Manufacture, Sale, and Wearing of Weapons
##### Oklahoma Firearms Act of 1971
###### Section 1289.25 - Physical or Deadly Force Against Intruder

Cite as: O.S. §, __ __



A. The Legislature hereby recognizes that the citizens of the State of Oklahoma have a right to expect absolute safety within their own homes or places of business.

B. A person or an owner, manager or employee of a business is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:

1. The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a dwelling, residence, occupied vehicle, or a place of business, or if that person had removed or was attempting to remove another against the will of that person from the dwelling, residence, occupied vehicle, or place of business; and

2. The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

C. The presumption set forth in subsection B of this section does not apply if:

1. The person against whom the defensive force is used has the right to be in or is a lawful resident of the dwelling, residence, or vehicle, such as an owner, lessee, or titleholder, and there is not a protective order from domestic violence in effect or a written pretrial supervision order of no contact against that person;

2. The person or persons sought to be removed are children or grandchildren, or are otherwise in the lawful custody or under the lawful guardianship of, the person against whom the defensive force is used; or

3. The person who uses defensive force is engaged in an unlawful activity or is using the dwelling, residence, occupied vehicle, or place of business to further an unlawful activity.

D. A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

E. A person who unlawfully and by force enters or attempts to enter the dwelling, residence, occupied vehicle of another person, or a place of business is presumed to be doing so with the intent to commit an unlawful act involving force or violence.

F. A person who uses force, as permitted pursuant to the provisions of subsections B and D of this section, is justified in using such force and is immune from criminal prosecution and civil action for the use of such force. As used in this subsection, the term "criminal prosecution" includes charging or prosecuting the defendant.

G. A law enforcement agency may use standard procedures for investigating the use of force, but the law enforcement agency may not arrest the person for using force unless it determines that there is probable cause that the force that was used was unlawful.

H. The court shall award reasonable attorney fees, court costs, compensation for loss of income, and all expenses incurred by the defendant in defense of any civil action brought by a plaintiff if the court finds that the defendant is immune from prosecution as provided in subsection F of this section.

I. The provisions of this section and the provisions of the Oklahoma Self-Defense Act shall not be construed to require any person using a pistol pursuant to the provisions of this section to be licensed in any manner.

J. As used in this section:

1. "Dwelling" means a building or conveyance of any kind, including any attached porch, whether the building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it, including a tent, and is designed to be occupied by people;

2. "Residence" means a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest; and

3. "Vehicle" means a conveyance of any kind, whether or not motorized, which is designed to transport people or property.

### *Historical Data*

Laws 1987, HB 1511, c. 54, § 2, eff. November 1, 1987; Amended by Laws 1995, SB 3, c. 272, § 57, eff. September 1, 1995; Amended by Laws 2006, HB 2615, c. 145, § 2, eff. November 1, 2006 (superseded document available); Amended by Laws 2011, HB 1439, c. 106, § 1, eff. November 1, 2011 (superseded document available).

### Citationizer© *Summary of Documents Citing This Document*

| Cite Name | | Level |
|---|---|---|
| **Oklahoma Court of Criminal Appeals Cases** | | |
| Cite | Name | Level |
| 2007 OK CR 29, 164 P.3d 208, | EIZEMBER v. STATE | Cited |
| 2009 OK CR 5, | IN RE: ADOPTION OF THE 2009 REVISIONS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS CRIMINAL | Discussed |
| 2010 OK CR 1, 229 P.3d 1261, | OWENS v. STATE | Cited |
| 2011 OK CR 1, 252 P.3d 214, | DAWKINS v. STATE | Discussed at Length |
| 1998 OK CR 67, 972 P.2d 32, 70 OBJ 789, | State v. Anderson | Discussed at Length |
| 1999 OK CR 37, 989 P.2d 998, | Bernay v. State | Discussed |
| **Oklahoma Court of Civil Appeals Cases** | | |
| Cite | Name | Level |
| 2001 OK CIV APP 122, 33 P.3d 937, 72 OBJ 3100, | GILIO v. STATE EX. REL. OKLAHOMA BUREAU OF INVESTIGATION | Cited |
| **Oklahoma Jury Instructions- Criminal** | | |
| Cite | Name | Level |
| | Defense of Person - Right to Stand Your Ground | Cited |
| | Defense of Person - Justifiable Use of Deadly Force Against Intruder | Cited |

### Citationizer: *Table of Authority*

| Cite Name | | Level |
|---|---|---|
| **Title 21. Crimes and Punishments** | | |
| Cite | Name | Level |
| 21 O.S. 1289.25, | Physical or Deadly Force Against Intruder | Cited |



# OSCN THE OKLAHOMA STATE COURTS NETWORK

Home   Courts   Court Dockets   Legal Research   Calendar   Help

Previous Section | Top Of Index | This Point in Index | Citationize | Next Section | Print Only
Title 21. Crimes and Punishments

## Oklahoma Statutes Citationized
### Title 21. Crimes and Punishments
#### Chapter 24 - Homicide
##### Section 733 - Justifiable Homicide by Other Persons
Cite as: O.S. §, __ __

Appendix
D

A. Homicide is also justifiable when committed by any person in any of the following cases:

1. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is;

2. When committed in the lawful defense of such person or of another, when the person using force reasonably believes such force is necessary to prevent death or great bodily harm to himself or herself or another or to terminate or prevent the commission of a forcible felony; or

3. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed; or in lawfully suppressing any riot; or in lawfully keeping and preserving the peace.

B. As used in this section, "forcible felony" means any felony which involves the use or threat of physical force or violence against any person.

### *Historical Data*

R.L. 1910, § 2334; Amended by Laws 2014, HB 3510, c. 391, § 1, emerg. eff. June 3, 2014 (superseded document available).

### *Citationizer© Summary of Documents Citing This Document*

| Cite Name | Level | |
|---|---|---|
| 1999 10CIR 1508, 197 F.3d 1297, Hogan v. Gibson | Discussed | |

**Oklahoma Court of Criminal Appeals Cases**

| Cite | Name | Level |
|---|---|---|
| 1988 OK CR 122, 758 P.2d 319, | USSERY v. STATE | Cited |
| 1992 OK CR 17, 829 P.2d 47, | CAMRON v. STATE | Cited |
| 1992 OK CR 55, 840 P.2d 1, | BECHTEL v. STATE | Discussed |
| 2001 OK CR 5, 21 P.3d 1047, 72 OBJ 858, | BLACK v. STATE | Discussed |
| 2001 OK CR 25, 32 P.3d 869, 72 OBJ 2629, | CIPRIANO v. STATE | Cited |
| 2011 OK CR 15, 255 P.3d 425, | ROBINSON v. STATE | Cited |
| 2011 OK CR 29, 268 P.3d 86, | DAVIS v. STATE | Cited |
| 1954 OK CR 23, 267 P.2d 185, | EASTERLING v. STATE | Cited |
| 1954 OK CR 85, 275 P.2d 347, | HAINES v. STATE | Discussed |
| 1958 OK CR 94, 333 P.2d 602, | MAMMANO v. STATE | Cited |
| 1965 OK CR 53, 401 P.2d 997, | FLEMING v. STATE | Cited |
| 1981 OK CR 132, 636 P.2d 342, | COWLES v. STATE | Cited |
| 1981 OK CR 152, 637 P.2d 879, | LEE v. STATE | Cited |
| 1949 OK CR 89, 209 P.2d 721, 90 Okl.Cr. 1, | ANDERSON v. STATE | Cited |

# OSCN THE OKLAHOMA STATE COURTS NETWORK

www.oscn.net

Home    Courts    Court Dockets    Legal Research    Calendar    Help

Previous Section | Top Of Index | This Point in Index | Citationize | Next Section | Print Only
Title 21. Crimes and Punishments

📁 **Oklahoma Statutes Citationized**
📁 **Title 21. Crimes and Punishments**
  📁 **Chapter 24 - Homicide**
   📁 **Manslaughter**
    📄 **Section 711 - First Degree Manslaughter**
Cite as: O.S. §, __ __



*Appendix E*

---

Homicide is manslaughter in the first degree in the following cases:

1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.

2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

***Historical Data***

---

R.L. 1910, § 2320.

## Citationizer© Summary of Documents Citing This Document

| Cite Name | | Level |
|---|---|---|
| 1999 10CIR 1508, 197 F.3d 1297, | Hogan v. Gibson | Discussed |
| **Oklahoma Court of Criminal Appeals Cases** | | |
| Cite | Name | Level |
| 1977 OK CR 44, 560 P.2d 219, | SHORT v. STATE | Discussed at Length |
| 1977 OK CR 47, 560 P.2d 223, | PREJEAN v. STATE | Cited |
| 1988 OK CR 19, 749 P.2d 1163, | DOUMA v. STATE | Discussed |
| 1988 OK CR 109, 763 P.2d 695, | FUNKHOUSER v. STATE | Discussed at Length |
| 1988 OK CR 122, 758 P.2d 319, | USSERY v. STATE | Discussed |
| 1988 OK CR 135, 758 P.2d 829, | DUMIRE v. STATE | Cited |
| 1988 OK CR 276, 765 P.2d 794, | VIGIL v. STATE | Cited |
| 1988 OK CR 292, 766 P.2d 1007, | SMITH v. STATE | Cited |
| 1988 OK CR 296, 767 P.2d 887, | LAMB v. STATE | Cited |
| 1989 OK CR 1, 771 P.2d 224, | DREW v. STATE | Cited |
| 1989 OK CR 32, 777 P.2d 399, | THOMAS v. STATE | Cited |
| 1989 OK CR 33, 777 P.2d 1355, | BROWN v. STATE | Discussed at Length |
| 1990 OK CR 61, 798 P.2d 1083, | WEST v. STATE | Discussed |
| 1990 OK CR 78, 803 P.2d 1145, | ARNOLD v. STATE | Cited |
| 1991 OK CR 64, 825 P.2d 621, | DUVALL v. STATE | Cited |
| 1991 OK CR 65, 815 P.2d 186, | THORNBURGH v. STATE | Cited |
| 1991 OK CR 83, 814 P.2d 504, | SLUSHER v. STATE | Cited |
| 1992 OK CR 17, 829 P.2d 47, | CAMRON v. STATE | Discussed at Length |
| 1992 OK CR 19, 829 P.2d 64, | HUNTER v. STATE | Cited |
| 1992 OK CR 23, 829 P.2d 984, | STILES v. STATE | Cited |

